# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODERICK JOHNSON, | No. 4:18-CV-01924 |
| Plaintiff, | (Judge Brann) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

MAY 7, 2019

## I. BACKGROUND

In 1997, Roderick Johnson was convicted in Pennsylvania state court of two counts of first-degree murder and was sentenced to death.[1] As a result of that sentence, from February 1998 until January 2018, Johnson was incarcerated in various capital units within the Pennsylvania Department of Corrections where he was placed in solitary confinement.[2] Among the conditions that Johnson alleges accompanied solitary confinement were: confinement alone in his cell for 22 to 24 hours per day, with nearly all activities occurring within that cell; only 2 hours of recreational activity per day in a cage with another inmate; no physical contact

---

[1] Doc. 3-1 at 39.

[2] Doc. 3 at 2.

during family visits; showering only 3 times per week; being strip searched and handcuffed for any movements outside of his cell; no access to general population programs such as music programs, tutoring, or exercise equipment; and being confined in a small cage during visits to the prison's law library.[3]

Beginning shortly after he was convicted, Johnson undertook numerous attempts to vacate his convictions and sentence, first through a direct appeal, then various collateral review actions in state and federal court.[4] Eventually, Johnson obtained several exculpatory documents that were withheld from the defense during trial.[5] Based on that information, Johnson amended a petition for post-conviction relief ("PCR") to include an alleged violation of his *Brady*[6] rights; on July 6, 2015, the PCR court granted Johnson's petition, vacated his convictions and sentence, and ordered a new trial.[7] The Commonwealth appealed that decision, and on December 19, 2017, the Supreme Court of Pennsylvania affirmed the PCR court's decision.[8] Johnson was transferred out of the capital unit on January 11, 2018.[9]

---

[3] *Id.* at 8-9.
[4] Doc. 3-1 at 42-43.
[5] *Id.* at 44-45.
[6] *Brady v. Maryland*, 373 U.S. 83 (1963).
[7] Doc. 3-1 at 45-46.
[8] *Id.* at 39-53.
[9] Doc. 3 at 2.

In May 2018, Johnson filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights by (1) placing Johnson in solitary confinement for two decades in inhumane conditions and (2) confining Johnson in the capital unit for years after his convictions and death sentence were vacated.[10] Defendants have filed a motion to dismiss in which they argue that: (1) Johnson's Eighth Amendment claim fails because the United States Court of Appeals for the Third Circuit previously concluded that the conditions of confinement in Pennsylvania's capital units do not violated the Eighth Amendment; (2) Johnson's due process claim fails because the order vacating his convictions was stayed pending appeal and, thus, Johnson had no protected liberty interest in avoiding the capital unit; and (3) Defendants are entitled to qualified immunity.[11] Johnson filed a response, asserting that the Pennsylvania Department of Corrections' decision to alter the conditions of confinement for current capital unit inmates demonstrates that it knew such conditions violated the Eighth Amendment.[12]

After the motion to dismiss was filed, this Court granted Johnson's motion to amend his complaint.[13] Because the Court granted leave to amend, it concluded that

---

[10] Doc. 3.
[11] Doc. 30.
[12] Docs. 36, 37.
[13] Doc. 51.

Defendants' motion to dismiss was moot, and denied it as such.[14] However, Johnson subsequently informed the Court that he no longer wishes to amend his complaint.[15] In light of Johnson's stated preference to have his complaint ruled on as filed, Defendants' motion to dismiss is not moot and is instead ripe for consideration. For the following reasons, the motion will be granted.

## II. DISCUSSION

"In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), [this Court must] accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff."[16] "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility."[17] "This requires a plaintiff to plead sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for misconduct alleged."[18]

---

[14] *Id.* at 3.

[15] Doc. 52.

[16] *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks omitted).

[17] *Id.*

[18] *Id.* (internal quotation marks omitted).

In considering motions to dismiss, district courts must be mindful that public officials are afforded qualified immunity for acts undertaken in their official capacities. "Under the doctrine of qualified immunity, 'officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'"[19] Assessing a qualified immunity defense involves a two-step process: first the Court must "determine whether a right has been violated. If it has, [this Court] then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful."[20]

A. *Eighth Amendment Claim*

Johnson first alleges that his conditions of confinement in various capital units violated the Eighth Amendment's prohibition against cruel and unusual punishment.[21] "The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'"[22] "The Supreme Court has interpreted this prohibition . . . to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'"[23] "[C]laims concerning conditions of confinement require a plaintiff

---

[19] *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[20] *Id.*

[21] Doc. 3 at 13-14.

[22] *Young v. Martin*, 801 F.3d 172, 182 (3d Cir. 2015).

[23] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

5

to show that the prison conditions 'posed a substantial risk of serious harm' and that the prison officials were deliberately indifferent to that risk."[24] Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[25]

Although the conditions of Johnson's confinement in capital units were undoubtedly harsh, binding Third Circuit precedent compels the Court to conclude that Johnson has failed to state an Eighth Amendment claim. In *Peterkin v. Jeffes*,[26] the Third Circuit examined the conditions of confinement for Pennsylvania capital unit inmates at two separate prisons. The plaintiffs in *Peterkin* alleged that those conditions violated the Eighth Amendment's prohibition against cruel and unusual punishment.[27] The plaintiffs complained that they were: (1) locked in their cells for 22 to 24 hours per day; (2) forced to conduct almost all activities within their cells; (3) given small cells; (4) permitted only 3 showers per week; (5) allowed no physical contact with visitors; (6) provided access to only small, outdoor activity areas; and (7) permitted no access to general population activities.[28]

---

[24] *Id.* (quoting *Farmer*, 511 U.S. at 834 (brackets omitted)).

[25] *Farmer*, 511 U.S. at 837.

[26] 855 F.2d 1021 (3d Cir. 1988).

[27] *Id.* at 1022.

[28] *Id.* at 1025-26, 1028-29, 1031.

The Third Circuit carefully analyzed the conditions of confinement for capital unit inmates and concluded that "the totality of the conditions comprising the punishment of prisoners under sentence of death at the State Correctional Institutions at Graterford and Huntingdon does not contravene the eighth amendment."[29] In so concluding, the Third Circuit emphasized:

> The primary responsibility for operating prisons belongs to prison administrators, to other state law enforcement officials and to the state legislature. The eighth amendment does not authorize a federal court to second guess their decisions nor is it our role to express our agreement or disagreement with their overall policies or theories of prison administration, as long as we find no constitutional violation.[30]

The allegations presented in Johnson's complaint are nearly identical to those examined by the Third Circuit in *Peterkin*. As in *Peterkin*, Johnson alleges that, while in the capital unit, he was: (1) locked in his cell for 22 to 24 hours per day; (2) forced to conduct almost all activities within his cell; (3) provided a small cell; (4) permitted only 3 showers per week; (5) allowed no physical contact with visitors; (6) given access to only small, outdoor activity areas; and (7) allowed no access to general population activities.[31] There are only two key differences between the allegations presented in *Peterkin* and those in Johnson's complaint: while the

---

[29] *Id.* at 1032; *see id.* at 1026-33.

[30] *Id.* at 1032-33.

[31] Doc. 3 at 8-9.

7

plaintiffs in *Peterkin* had no access to a law library,[32] Johnson complains that he was confined to a small cage while at the law library,[33] and Johnson alleges that he was handcuffed and strip searched whenever he left his cell,[34] while no such allegation was present in *Peterkin*.

As to Johnson's allegations related to the law library, it is notable that the Third Circuit in *Peterkin* did not consider the question of access to the law library under the Eighth Amendment,[35] as that issue more properly relates to the First Amendment right of access to the courts.[36] That allegation thus has no impact on this Court's Eighth Amendment analysis, although, significantly, Johnson's access to the law library was far better than the limited access provided to the plaintiffs in *Peterkin*. Johnson's allegations regarding strip searches is of more concern, as prolonged use of such searches inevitably has a negative impact on prisoners.[37] Nevertheless, there is no allegation that these strip searches—which applied to all

---

[32] *Peterkin*, 855 F.2d at 1034.

[33] Doc. 3 at 9.

[34] *Id.* at 8.

[35] *See Peterkin*, 855 F.2d at 1022-33.

[36] To the extent that Johnson attempts to assert a First Amendment claim, it necessarily fails since there is no allegation that his placement in a confined area within the law library impaired his access to the courts, or that he suffered any actual harm from the conditions at the law library. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (noting that complaint must allege actual injury resulting from restrictions).

[37] *See Williams*, 848 F.3d at 554, 563 (noting that "psychological and physical intrusion of these 'full' body searches" "can trigger devastating psychological consequences, including a loss of a sense of self").

8

capital unit inmates—was done maliciously or improperly[38] and, thus, the addition of that allegation does not sufficiently distinguish the conditions that Johnson endured with those found tolerable by the Third Circuit in *Peterkin*.

Because Johnson's allegations are substantially similar to those that the Third Circuit found tolerable in *Peterkin*, this Court concludes that Johnson has failed to state a plausible Eighth Amendment claim related to his conditions of confinement in the capital unit.[39] The Court notes that the Third Circuit stated in *Peterkin* that "lengthy segregated confinement of the type considered in this case, after an inordinate lapse of time, may necessitate periodic review to insure that conditions once constitutional have not become cruel and unusual."[40] The Third Circuit may wish to revisit *Peterkin* in light of the recent advances in social sciences, recent advanced in our understanding of the impact that prolonged isolation has on an individual, and the "evolving standards of decency that mark the progress of a maturing society."[41] This Court does not, however, have the power to revisit binding precedent on the Third Circuit's behalf.

---

[38] *See Parkell v. Danberg*, 833 F.3d 313, 335-36 (3d Cir. 2016) (holding that even "thrice-daily visual-body cavity searches . . . do not constitute cruel and unusual punishment unless they are undertaken maliciously or for the purposes of sexually abusing an inmate" (internal quotation marks omitted)).

[39] Although Johnson asserts that the Pennsylvania Bureau of Prisons voluntarily revamped its capital units (Doc. 36), such action is not evidence that the previous conditions violated the Eighth Amendment.

[40] *Peterkin*, 855 F.2d at 1033.

[41] *Id.* at 1023.

Finally, even if the Court were able to conclude that Johnson's conditions of confinement in the capital unit violated the Eighth Amendment, Defendants would be entitled to qualified immunity. As discussed previously, *Peterkin* addressed allegations that were substantially similar to those presented by Johnson, and the Third Circuit has never overruled or questioned its decision in *Peterkin*. Consequently, it cannot be said that Johnson's right to avoid the conditions of confinement that he describes—if one existed—was clearly established at the time of his confinement, and Defendants therefore cannot be held liable for any violation of Johnson's Eighth Amendment rights.[42]

B. *Equal Protection Claim*

Johnson next alleges violations of his Fifth and Fourteenth Amendment equal protection rights.[43] "The Fifth Amendment's Due Process Clause contains the same guarantee of equal protection under law as that provided in the Fourteenth Amendment."[44] "To prevail on his equal protection claim, [Johnson] must show that the Government has treated [him] differently from a *similarly* situated party *and* that

---

[42] *Williams*, 848 F.3d at 570 (noting that "[f]or a right to have been 'clearly established,' 'existing precedent must have placed the statutory or constitutional question beyond debate'" and holding that "although the precedent that existed when Defendants continued Plaintiffs' confinement on death row should have suggested caution, it was not sufficient to inform Defendants that their conduct violated clearly established law" (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

[43] Doc. 3 at 14-15.

[44] *Cabrera v. Attorney Gen. U.S.*, __ F.3d __, __, No. 18-2192, 2019 WL 1748143, at *2 (3d Cir. Apr. 19, 2019) (internal quotation marks omitted).

the Government's explanation for the differing treatment does *not* satisfy the relevant level of scrutiny."⁴⁵

Johnson bases his equal protection claim solely on the assertion that "[D]efendants knowing[ly] and intentional[ly] fail[ed] to remove [Johnson] from 'death row' as housed in solitary confinement once his sentence of death had been vacated."⁴⁶ Thus, Johnson alleges that he was treated dissimilarly from other non-death-sentenced prisoners. That contention is, however, fatally flawed because Johnson has identified the wrong comparators.

Although Johnson's convictions and sentence were vacated by the PCR court on July 6, 2015, the Commonwealth filed a timely appeal of that decision.⁴⁷ Pursuant to the Pennsylvania Rules of Appellate Procedure, the Commonwealth's notice of appeal automatically stayed the PCR court's order, and that stay "continue[d] through any proceedings in the United States Supreme Court."⁴⁸ The Supreme Court of Pennsylvania affirmed the PCR court's decision on December 19, 2017,⁴⁹ and the United States Supreme Court denied the Commonwealth's petition for a writ of certiorari on October 9, 2018.⁵⁰ Johnson asserts that he was released from the capital

---

⁴⁵ *Id.* (internal quotation marks omitted).

⁴⁶ Doc. 3 at 14.

⁴⁷ Doc. 3-1 at 45-46.

⁴⁸ Pa. R. App. P. 1736(b).

⁴⁹ Doc. 3-1 at 39.

⁵⁰ *Pennsylvania v. Johnson*, 139 S. Ct. 323 (2018).

11

unit on January 11, 2018,[51] less than one month after the Supreme Court of Pennsylvania's decision, but well before the stay of the PCR court's decision was lifted by operation of the United States Supreme Court's order denying certiorari. Consequently, for the entirety of Johnson's confinement in the capital unit, he was a death-sentenced inmate and must therefore be compared with other such inmates, rather than with inmates in the general population. Because Johnson was treated similarly to other similarly situated death-sentenced inmates, his equal protection claim fails.[52]

### C. *Due Process Claim*

Finally, Johnson asserts that his due process rights were violated when he was confined to the capital unit after his convictions and sentence were vacated.[53] "The Due Process Clause of the Fourteenth Amendment prohibits states from 'depriving any person of life, liberty, or property, without due process of law,' U.S. Const. amend. XIV, and contains both substantive and procedural components."[54] "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs."[55] "To maintain a

---

[51] Doc. 3 at 2; *see* Doc. 30 at 5.
[52] *Cabrera*, 2019 WL 1748143 at *2.
[53] Doc. 3 at 12-14.
[54] *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017).
[55] *Id.* (internal quotation marks omitted).

12

substantive due process claim, [Johnson] must have been deprived of a particular interest that is protected by the substantive due process clause."[56] Similarly, "[t]o maintain a procedural due process claim, [Johnson] must show that: (1) Defendants deprived him of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures Defendants made available to him did not provide due process of law."[57] "The liberty rights protected by procedural due process are broader than those protected by substantive due process; they 'may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or they 'may arise from an expectation or interest created by state laws or policies.'"[58]

Thus, whether Johnson asserts a substantive or procedural due process claim, he must identify a protected liberty interest of which he was deprived by Defendants.[59] Johnson contends that the Third Circuit identified such a protected liberty interest in *Williams v. Secretary Pennsylvania Department of Corrections*. There, the Third Circuit concluded that conditions in Pennsylvania's capital units— as applied to prisoners who are not serving a capital sentence—constitute

---

[56] *Id.* (internal quotation marks omitted).

[57] *Id.* at 507.

[58] *Id.* (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

[59] *Id.* at 501.

13

"significant and atypical conditions of confinement that give rise to a protected liberty interest."[60]

However, in that case the Commonwealth did not appeal the PCR courts' orders vacating plaintiffs' capital sentences.[61] Thus, the PCR courts' orders were not stayed, and the plaintiffs' sentences were vacated from the moment those orders were entered. As a result, the plaintiffs were confined to the capital unit despite no longer serving active capital sentences.[62] In contrast, Johnson was serving an active capital sentence at all times during his confinement within the capital unit. This distinction is critical to the Third Circuit's decision in *Williams*; not only did the court decline to extend its holding to "inmates whose death sentences are still active and viable,"[63] it also expressly distinguished its decision from a series of cases in other circuit courts in which "inmates were all confined pursuant to death sentences *that had not been vacated*."[64]

The Third Circuit recognized a consensus among other circuit courts that, when an inmate is serving a capital sentence, "confinement on death row [i]s not a significant or atypical hardship for them. Rather, it [i]s expressly within the

---

[60] *Williams*, 848 F.3d at 564.

[61] *Id.* at 555-56.

[62] *Id.* at 553.

[63] *Id.* at 552 n.2.

[64] *Id.* at 569; *see id.* at 569 n.131 (collecting cases).

14

'expected perimeters of the sentence imposed.'"[65] Because *Williams* is inapplicable here, and in accordance with the wide body of case law holding that the conditions Johnson faced in the capital unit, although difficult, were expected as part of his capital sentence, it cannot be said that such conditions presented a significant and atypical hardship sufficient to create a protected liberty interest.[66] In the absence of a protected liberty interest, Johnson's due process claim fails. At the very least, in light of the consensus achieved by various circuit courts holding that confinement in capital units is not a significant or atypical hardship for death-sentenced prisoners, even if Johnson's due process right was violated, such right was not clearly established at the time it was violated.[67] Defendants are therefore entitled to qualified immunity on this claim.

---

[65] *Id.* at 569 (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).

[66] *See id.* at 569 & n.131.

[67] *See Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (noting that courts should "typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional"), *cert. denied*, 138 S. Ct. 1990 (2018); *Cole v. Encapera*, 758 F. App'x 252, 256 (3d Cir. 2018) (holding that right appellant sought to assert was not clearly established in light of contrary out-of-circuit precedent).

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Because Johnson cannot, as a matter of law, amend his complaint to adequately state any of the claims asserted, the complaint is dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge